CLARA J. SHIN (No. 214809)
cshin@howardrice.com
SHAUDY DANAYE-ELMI (No. 242083)
sdanaye-elmi@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:    415/434-1600
Facsimile:    415/677-6262

Attorneys for Defendant
META INTERFACES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FRASERSIDE HOLDINGS, LTD, a foreign limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>META INTERFACES, LLC, a limited liability company,<br><br>Defendant. | No. CV 10-3585 BZ<br><br>Action Filed: August 13, 2010<br><br>DEFENDANT META INTERFACES, LLC'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS I-VII OF THE COMPLAINT FOR FAILURE TO STATE A CLAIM<br>(Fed. R. Civ. P. 12(b)(6))<br><br>Date:       October 27, 2010<br>Time:       10:00 a.m.<br>Place:      Courtroom G<br>Judge:      Hon. Bernard Zimmerman<br><br>Trial Date:    None set |

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

INTRODUCTION .................................................................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 2

ALLEGATIONS OF THE COMPLAINT ......................................................... 4

    A.    The Parties. ......................................................................................... 4

    B.    The Agreement. .................................................................................. 4

    C.    Alleged Breaches Of The Agreement. ............................................ 6

    D.    Fraserside's Legal Conclusions And Requested Statutory Damages. ... 7

ARGUMENT ........................................................................................................ 7

I.    FRASERSIDE FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT. ........................................................ 8

    A.    As A Licensor, Fraserside Waived Its Right To Sue Meta—Its Licensee—For Copyright Infringement. .......................... 8

    B.    Fraserside Fails To—And Cannot—Meet Its Burden Of Demonstrating That An Exception To The General Rule Of Waiver Applies In This Case. ............................................... 9

        1.    Section 2.1 Defines The License Scope. .................... 10

        2.    The Remainder Of The Agreement Confirms That The License Granted In Section 2.1 Is Not Conditioned Upon The Additional Terms. ................................................. 13

    C.    Fraserside's Allegations Do Not Show That Meta Violated Any Provision Of The License Agreement. ........................... 15

        1.    Fraserside Has Not Properly Alleged That Meta Violated The Promotional Segments Provision. ....................... 15

        2.    Fraserside Has Not Properly Alleged That Meta Violated The Third Party Benefit Provision. ............................. 17

        3.    Fraserside Has Not Properly Alleged That Meta Violated The Give Away Provision. ........................................ 17

II.    FRASERSIDE'S CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT FAILS AS A MATTER OF LAW. ................ 17

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF CONTENTS

**Page**

III.    FRASERSIDE FAILS TO STATE ANY CLAIM FOR RELIEF UNDER
THE LANHAM ACT.        18

    A.    As With A Copyright Licensor, A Trademark Licensor Waives Its
Right To Sue Its Own Licensee For Infringement.        18

    B.    The Lanham Act Claims Are Defective For The Independent
Reason That Fraserside Fails To Properly State The Elements Of,
Or Supporting Allegations For, A Lanham Act Violation.        19

        1.    Fraserside Fails To State A Claim For Trademark
Infringement Under The Lanham Act.        19

        2.    Fraserside Fails To State A Claim For False Designation Of
Origin Or For Unfair Competition Under The Lanham Act.        20

IV.    FRASERSIDE'S CLAIMS FOR AN ACCOUNTING AND FOR
CONSTRUCTIVE TRUST FAIL BECAUSE THEY ARE REMEDIES
(NOT CLAIMS), ARE INSUFFICIENT TO ESTABLISH FEDERAL
JURISDICTION, OR ARE PREEMPTED.        21

CONCLUSION        23

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4     *250 L.L.C. v. PhotoPoint Corp. (USA)*, 131 Cal. App. 4th 703 (2005)          14

5     *AmCan Enters. v. Renzi*, 32 F.3d 233 (7th Cir. 1994)          21

6     *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937 (2009)          7, 19

7     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)          8, 16, 18

8     *Bennett v. Carlen*, 213 Cal. App. 2d 307 (1963)          14

9     *Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)          4

10    *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)          21

11    *Dillingham-Ray Wilson v. City of Los Angeles*, 182 Cal. App. 4th 1396 (2010)          14

12    *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555 (9th Cir. 1990)          9, 12, 14

13    *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479 (5th Cir. 1981)          12

14    *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115 (N.D. Cal. 2001)          22

15    *Graham v. James*, 144 F.3d 229 (2d Cir. 1998)          12

16    *In re CFLC, Inc.*, 89 F.3d 673 (9th Cir. 1996)          8

17    *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749 (11th Cir. 1997)          9, 12

18    *Jacobs v. Tenneco West, Inc.*, 186 Cal. App. 3d 1413 (1986)          14

19    *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628 (9th Cir. 2008)          19

20    *Kadner v. Shields*, 20 Cal. App. 3d 251 (1971)          14

21    *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp. 944 (S.D.N.Y. 1997)          9

22    *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)          18

23    *Motown Record Corp. v. George A. Hormel & Co.*, 657 F. Supp. 1236 (C.D. Cal.
          1987)          22

24

25    *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332 (9th Cir. 1990)          8, 13

26    *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007)          18

27    *Segal v. Geisha NYC LLC*, 517 F.3d 501 (7th Cir. 2008)          18

28    *Sony Corp. of Am. v. Universal City Studios, Inc.* 464 U.S. 417 (1984)          8

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

# TABLE OF AUTHORITIES

Page(s)

*SOS, Inc. v. Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ... 10

*Stansfield v. Starkey*, 220 Cal. App. 3d 59 (1990) ... 21

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434 (9th Cir. 1993) ... 22

*Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115 (9th Cir. 1999) ... 8, 9, 10, 15

*Sun Microsystems, Inc. v. Microsoft Corp.*, 81 F. Supp. 2d 1026 (N.D. Cal. 2000) ... 9, 11, 12, 13

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704 (2002) ... 21

*United States Naval. Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692 (2d Cir. 1991) ... 9

*Wachovia Bank v. Lifetime Indus., Inc.*, 145 Cal. App. 4th 1039 (2006 ... 15

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ... 8

*William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255 (9th Cir. 1995) ... 20, 21

## Statutes

15 U.S.C. §1125(a) ... 20

28 U.S.C. §1367 ... 21

Fed. R. Civ. P. 12(b)(6) ... 1

Cal. Civ. Code §1691 ... 13

## Other Authorities

1 B. Witkin, *Summary of California Law*, Contracts §778 (10th ed. 2005) ... 14

3 Nimmer, *Nimmer on Copyright* §10.15[A][2] (2010) ... 9

4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed. 2010)
    §25:26 ... 19
    §25:30 ... 18

5A C. Wright & A. Miller, *Federal Practice and Procedure*, §1327 (3d ed. 2004) ... 4

*Developments in the Law, Trade-Marks and Unfair Competition*, 68 Harv. L. Rev. 814 (1955) ... 19

S. Rep. No. 1333, 79th Cong., 2d Sess. 1, 3 (1946) ... 19

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on October 27, 2010, at 10:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Interfaces, LLC will and hereby does move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff's suit for failure to state a claim upon which relief can be granted (the "Motion"). The Motion is based upon the Complaint, this Notice and Motion, the Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice, the [Proposed] Order submitted herewith, and such other and further papers and argument as may be submitted to the Court at or before the hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff Fraserside Holdings, Ltd. ("Fraserside") accuses Defendant Meta Interfaces, LLC ("Meta") of violating terms of a license agreement, but makes no claim that Meta is a thief, counterfeiter, or pirate—the conduct against which federal copyright laws are designed to protect. Quite the opposite. Fraserside admits that it *does business with* Meta—that Fraserside granted Meta a three-year license to distribute, transmit, and stream 200 adult content films, and that Meta, in return, paid Fraserside a flat license fee of $106,000. Nearly halfway into the license term, Fraserside brings this lawsuit seeking the draconian remedy of enhanced statutory damages— $150,000 for "each infringed motion picture"—for what are no more than breaches of contract provisions that are peripheral to the license (even assuming that all of Fraserside's allegations are true). Fraserside does so while acknowledging that it does not know whether Meta even owns or controls the websites engaged in the activities it is protesting and making no concrete allegations to show how it has been injured or harmed. Surely that cannot be the application of the Copyright Act that Congress had in mind.

The benefit of the bargain for a copyright licensee is to be able to use copyrighted works without fear of suit by the copyright owner, and honoring this bargain promotes the objectives of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  copyright law by encouraging parties to pay for use of copyrighted works rather than using those

2  works without authorization in the hopes of not getting caught.  If licensors can simply sue their

3  licensees for copyright infringement despite the existence of a license, then paying a negotiated fee

4  for a copyright license makes little sense from the perspective of a licensee.  If that were the law,

5  then copyright licenses would be few and far between, and unauthorized copyright use could make

6  more economic sense.  That would not serve the objectives of copyright law, which is to reward the

7  copyright owner with a limited monopoly over, or else payment for, its copyrighted works.

8  Fraserside has not only sued its licensee, it improperly seeks to convert a negotiated license

9  fee of $106,000 into a copyright infringement for millions of dollars in statutory damages without

10  any alleged or apparent injury or harm.  A key rationale for statutory damages is that it is often

11  difficult to establish the number of copies that had been made by an underground pirate business—

12  because counterfeiters generally do not maintain books or records.  That justification has no

13  application here.  Meta is no underground pirater.  Meta is Fraserside's licensee.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

15  ## SUMMARY OF ARGUMENT

16  Rather than serving the objectives of copyright law, Fraserside's Complaint for Damages and

17  Injunctive Relief (the "Complaint") is a transparent attempt to convert a run of the mill state law

18  contract dispute between a licensor and its licensee into a federal case for copyright and trademark

19  infringement, with an eye to statutory damages that would multiply its license fee many times over.

20  While Fraserside alleges seven causes of action in its Complaint—(1) copyright infringement; (2)

21  contributory copyright infringement; (3) trademark infringement under the Lanham Act; (4) false

22  designation of origin under the Lanham Act; (5) unfair competition under the Lanham Act; (6)

23  accounting; and (7) constructive trust—those claims are all built upon the same foundation: the

24  allegation that Meta breached certain covenants of a Content License Agreement (the "Agreement").

25  But that allegation sounds in *contract*, and cannot be transmuted into federal infringement claims.

26  This is a fatal defect of the Complaint, and one which cannot be cured with leave to amend.

27  The Complaint should be dismissed in its entirety for the following reasons:

28  *First*, Fraserside's copyright infringement claim (Count I) fails to state a claim:

- As a licensor, Fraserside waived its right to sue Meta—its licensee—for copyright infringement. *See* Part I(A), *infra*.

- No exception to this rule applies because Fraserside has not shown, and cannot show, that a condition of the license has failed or that Meta exceeded the scope of its license. *See* Part I(B), *infra*.

- Based on the plain language of the Agreement, Fraserside fails to demonstrate that Meta has violated any of its terms. *See* Part I(C), *infra*.

*Second*, Fraserside's claim for contributory copyright infringement (Count II) is insufficient as a matter of law. The parties' license agreement covers Meta's distribution of the copyrighted works to third parties, and any alleged transgressions of those provisions are, again, a matter of contract law. In any event, Fraserside makes no factual allegations supporting its conclusory claim of contributory infringement. *See* Part II, *infra*.

*Third*, Fraserside's Lanham Act claims—trademark infringement (Count III), false designation of origin (Count IV), and unfair competition (Count V)—are fatally defective. Fraserside is unable to allege the basic elements of the claims and offers no factual detail whatsoever:

- Fraserside does not allege that *Meta* uses Fraserside's trademarks in connection with the allegedly infringing activity; that Meta improperly uses those marks in connection with the sale or advertising of goods or services; that the marks are being used with any good or service other than Fraserside's *own* goods and services; or that Meta uses Fraserside's trademarks in violation of the Agreement. Fraserside's trademark infringement claim thus fails. *See* Part III(A), *infra*.

- Fraserside's allegations of false designation of origin and unfair competition—both under Section 43(a) of the Lanham Act—is defective for the same reason as the trademark infringement claim: Fraserside's claims pertain to purportedly infringing activities on three websites, but Fraserside nowhere alleges that *Meta* makes any representations, conducts advertising, or displays trademarks on those sites. *See* Part III(B), *infra*.

*Fourth*, the state law claims of accounting and constructive trust fail with the federal claims (because they are not actually stand-alone claims, but remedies), because there is not federal

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

jurisdiction, or else because they are preempted by the copyright claims. *See* Part IV, *infra*.

None of these defects can be cured, and Fraserside's Complaint should be dismissed in its entirety with prejudice.

## ALLEGATIONS OF THE COMPLAINT

### A.   The Parties.

Plaintiff Fraserside describes itself as "one of the world's leading producers of high quality brand driven motion picture films." Complaint ("Compl.") ¶7. Defendant Meta owns and operates subscription-based websites that display videos, including those produced by Fraserside. *Id.* ¶10. The motion picture films produced by Fraserside—and licensed by Meta—are sexually explicit adult films. *See, e.g., id.* ¶63 (allegations relating to film titled "Beauties In The Tropix"); *id.* ¶102 (same regarding film entitled "Dominatrix Chess Gambit").

### B.   The Agreement.

On May 11, 2009, Fraserside and Meta entered into the Agreement,[1] pursuant to which Fraserside granted to Meta a license to use and distribute 200 of Fraserside's films, as well as to use trademarks in connection with those works. *Id.* ¶11. In exchange, Meta agreed to pay Fraserside a one-time, flat license fee of $106,000. *See* Request for Judicial Notice (filed herewith) ("RJN"), Ex. A §6.1 at 3.

*The License.* Section 2.1 of the Agreement sets forth Meta's broad "Use and Distribution" rights (*i.e.*, the scope of Meta's license):

> **2.1   Use and Distribution.** Licensor hereby grants to Licensee an irrevocable, worldwide, non-exclusive, non-transferable (except as expressly provided in this Agreement) three (3) year right and license to (i) *distribute, transmit, stream, and*

---

[1]Meta has submitted with this Motion a Request for Judicial Notice of the Agreement, attached thereto as Exhibit A, which the Court may consider in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss"); 5A C. Wright & A. Miller, *Federal Practice and Procedure*, §1327 at 438-39 (3d ed. 2004) ("when the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading").



HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

*otherwise allow the download or electronic transmission, . . . of the Titles (or any portion thereof) by any means* (including hereinafter invented means) other than physical delivery via DVD, video tape or other physical storage means; (ii) use and reproduce Titles on systems controlled by Licensee for the purposes of distribution; . . . and (v) utilize and display the trademarks contained in the Titles, the covers of the Titles and associated with the studio producing the titles for purposes consistent with organizing, displaying and promoting the viewing and distribution of the Titles through Licensee's websites. (*Id.* §2.1 at 2 (emphasis added))[2]

The Agreement defines "Licensee" as "Metainterfaces LLC together with its subsidiaries and affiliates, and all servers, systems and websites controlled by Metainterfaces LLC or its subsidiaries or affiliates." RJN, Ex. A §1 at 1. "Licensee" is excluded from the definition of "Third Party": "'Third Party' shall mean parties that are not any of the following (i) Licensee or any of Licensee's affiliates, subsidiaries, directors, officers, employees or contractors, (ii) any End User, or (iii) any owner or other party who receives compensation in respect of the revenue or profit generated by Licensee's websites and businesses." *Id.*

***Additional Terms.*** Section 2.2 of the Agreement sets forth "Restrictions and Additional Terms." *Id.* §2.2 at 2. Three of those provisions are at issue in the Complaint; we refer to them collectively as the "Additional Terms":

- Providing Promotional Segments (the "Promotional Segments Provision"): "Licensee may provide up to 10% of each DVD, Video Clip, and/or Photo Galleries to their affiliates for promotional use . . . and up to an additional 10% for website design, promotional banners, buttons and other advertisements. Notwithstanding the foregoing, the promotional segments shall not exceed at any case two (2) minutes in duration per scene unless authorized in writing by Licensor." *Id.* §2.2 at 2.

- Giving Away Titles (the "Give Away Provision"). Meta "may not rent, lease, sublicense, give away, lend, transfer, authorize the use of or distribute the Titles . . . or in anyway [sic] transmit the Titles to any Third Party except as provided herein through the bonafide use of Licensee's websites." *Id.* Meta's affiliates and other parties who receive compensation

---

[2]The "Titles" are defined in relevant part as "the audio-visual assets owned by Licensor and licensed to Licensee . . . ." RJN, Ex. A §1 at 2.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

based on the revenue or profit generated by Meta's websites (collectively, "Affiliates") are expressly excluded from the definition of "Third Party." *See id.* §2.2 at 2.

- <u>Third Party Benefit (the "Third Party Benefit Provision")</u>. Meta "does not have the right and/or power to use, in any way, the Titles commercially for the benefit of a Third Party." *See id.* §2.2 at 2. Again, Affiliates are not "Third Parties." *See id.* §2.2 at 2.

***Unrestricted Rights To Redistribute Titles Through URLs.*** In the concluding paragraph of Section 2, the Agreement states that, "Notwithstanding anything in this Agreement to the contrary, *distribution through a url shall in all cases be permitted*." *Id.* at 2 (emphasis added). This provision sets forth the "final word" regarding Meta's unrestricted rights to distribute the Titles through a url.

### C.   Alleged Breaches Of The Agreement.

Fraserside does not—and cannot—allege that Meta violated the use and distribution rights granted to Meta in Section 2.1 of the Agreement. Instead, Fraserside's 123-page Complaint—a repetitive cut-and-paste effort—boils down to following allegations:

- Fraserside's videos are displayed on three urls—(1) www.skimtube.com, (2) www.eskimotube.com, and (3) www.tjoob.com (collectively, the "Sites"). Compl. ¶¶31, 148, 253. Fraserside admits that it does not know who operates or controls the sites (*id.* ¶28), but alleges that the films are "accompanied with a specific statement that the video is provided 'By: X-Movie,'" (*id.* ¶¶36, 259), or "accompanied with a specific statement, 'Download Full Scene at: X-Movie,'" (*id.* ¶154), and a "link to www.xmovie.com, which is owned and controlled by [Meta]." *Id.* ¶¶36, 154, 259.

- The Sites display Fraserside video clips lasting more than two minutes in length. *See id.* ¶¶35, 153, 256.

Fraserside also complains that the videos are displayed on the Sites with third party advertising (*id.* ¶¶34, 151, 255), with nearby links to a subscription based website (*id.* ¶152), and with icon functions that purportedly induce end users to promote the videos to third parties (*id.* ¶258), but Fraserside does not identify any provision of the Agreement that prohibits any of these activities.

Significantly, Fraserside admits that it does not know whether, or make any allegation that, the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

Sites are owned or controlled by Meta. *See id.* ¶28. Instead, Fraserside alleges that, to the extent the Sites are owned and controlled by Meta, Meta is "governed by terms of the licensing agreement that prevent and prohibit [Meta] from utilizing Plaintiff's videos for the benefit of third parties in any manner" (*id.* ¶29), and that, to the extent the Sites are owned and controlled by "third parties," the videos are "provided by MetaInterfaces, and MetaInterfaces is governed by the terms of the licensing agreement that prevents and prohibits MetaInterfaces from giving away, [sic] Plaintiff's videos and permitting any affiliate, or other person/entity directing Internet traffic to MetaInterfaces' web sites, to use more than two minutes of a Plaintiff video." *Id.* ¶30.[3]

### D.   Fraserside's Legal Conclusions And Requested Statutory Damages.

Based entirely on the purported breaches identified above, Fraserside makes conclusory allegations of (1) copyright infringement (*id.* ¶¶379-390), (2) contributory copyright infringement (*id.* ¶¶391-398), (3) trademark infringement (*id.* ¶¶399-401), (4) false designation of origin (*id.* ¶¶402-405), (5) unfair competition (*id.* ¶¶406-408), (6) accounting (*id.* ¶¶409-411), and (7) constructive trust. *Id.* ¶¶412-414. Fraserside's allegations amount, at best, to a garden-variety state law contract claim—not to claims for federal copyright or trademark infringement warranting statutory damages *in the millions*. For the reasons set out below, Counts I through VII fail as a matter of law.

### ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's factual allegations must amount to more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, —U.S.—, 129 S. Ct. 1937, 1949 (2009). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950.

Additionally, this Court need not accept legal conclusions as true. "Threadbare recitals of the

---

[3]Fraserside also recites that the Agreement requires Meta to notify and update Fraserside on all Meta web sites that provide Fraserside's films to Meta customers (*id.* ¶12), and that the Agreement requires Meta to provide Fraserside with a list of all websites on which Meta displays Fraserside's videos (*id.* ¶16), but nowhere alleges that Meta has breached these covenants.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

2   Nor do pleadings that offer "labels and conclusions, and a formulaic recitation of a cause of action's

3   elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Where a complaint pleads facts

4   that are "merely consistent with" a defendant's liability, it "stops short of the line between

5   possibility and plausibility of entitlement to relief." *Id.* at 557 (citation and internal quotation marks

6   omitted).

7        Finally, this Court need not accept as true factual allegations that are contradicted by

8   documents incorporated into the Complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d

9   1136, 1139 (9th Cir. 2003).

## I.

## FRASERSIDE FAILS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT.

### A.   As A Licensor, Fraserside Waived Its Right To Sue Meta—Its Licensee—For Copyright Infringement.

14   Fraserside admits that it granted a license to Meta to use Fraserside's films. Compl. ¶11; *see*

15   *also* RJN, Ex. A §2.1 at 2 (granting "an irrevocable, worldwide, non-exclusive . . . three (3) year

16   right and license"). And it makes no allegation that any films outside of the scope of the license

17   were used. Fraserside cannot now sue Meta—its licensee—for copyright infringement. The case

18   law is well established that, "*[g]enerally, a copyright owner who grants a nonexclusive license to*

19   *use his copyrighted material waives his right to sue the licensee for copyright infringement and can*

20   *sue only for breach of contract.*" *Sun Microsystems, Inc. v. Microsoft Corp.* ("*Sun I*"), 188 F.3d

21   1115, 1121 (9th Cir. 1999) (emphasis added) (citation and internal quotation marks omitted); *see*

22   *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338 (9th Cir. 1990) ("Generally, 'anyone

23   who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the

24   copyright with respect to such use'") (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464

25   U.S. 417, 433 (1984)); *see also In re CFLC, Inc.*, 89 F.3d 673, 677 (9th Cir. 1996) ("[the licensor]

26   owes significant continued performance to the licensee: it must continue to refrain from suing it for

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    infringement, since a nonexclusive patent license is, in essence, a mere waiver of the right to sue the

2    licensee for infringement") (quotations omitted).[4]

3    **B.    Fraserside Fails To—And Cannot—Meet Its Burden Of Demonstrating That An**
     **Exception To The General Rule Of Waiver Applies In This Case.**

4

5    Fraserside carries the burden of establishing that the default rule against a copyright violation

6    does not apply: "to gain the benefits of copyright enforcement, [the licensor] must *definitively*

7    *establish* that the rights it claims were violated are copyright, not contractual, rights." *Sun I*, 188

8    F.3d at 1122 (9th Cir. 1999) (emphasis added).   Fraserside must show either that the Additional

9    Terms are "conditions of, or restrictions on, the license grants." *Sun Microsystems, Inc. v. Microsoft*

10   *Corp. ("Sun II")*, 81 F. Supp. 2d 1026, 1032 (N.D. Cal. 2000). To put the same point differently, the

11   copyright holder must establish that the disputed terms are more than mere "independent contractual

12   covenants." *Sun I*, 188  F.3d at 1122. They must either be *conditions* of the license, or terms that

13   define the *scope* of the license. *See id.* at 1121 ("If . . . a license is limited in scope and the licensee

14   acts outside the scope, the licensor can bring an action for copyright infringement"); 3 Nimmer,

15   *Nimmer on Copyright* §10.15[A][2] (2010) ("If the grantee's violation consists of a failure to satisfy

16   a condition to the grant (as distinguished from a breach of covenant), it follows that the rights

17   dependant on satisfaction of that condition have not been effectively granted, rendering any use by

18   the grantee without authority from the grantor") (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555,

19   559 n.7 (9th Cir. 1990)).

20   Fraserside fails to allege—and will be unable to show—that the Additional Terms are

21   *conditions* of the Agreement or that the Additional Terms define the *scope* of Meta's license.  To

22   determine whether a licensor has successfully alleged either, courts "'rely on state law to provide the

23

---

24   [4]This rule is settled beyond the Ninth Circuit as well. *See Jacob Maxwell, Inc. v. Veeck*, 110

25   F.3d 749, 753 (11th Cir. 1997) (copyright owners "waived . . . any right to sue for breach of
     copyright on account of the playing of the song while the license was in effect"); *United States*

26   *Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) (though licensee "is
     capable of breaching the contractual obligations imposed on it by the license, [it] cannot be liable for

27   infringing the copyright rights conveyed to it"); *Keane Dealer Servs., Inc. v. Harts*, 968 F. Supp.
     944, 947 (S.D.N.Y. 1997) ("A license is a defense to a claim of copyright infringement").

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

META INTERFACES, LCC'S MOTION TO DISMISS                    CV 10-3585 BZ

canons of contractual construction'" provided that "'such rules do not interfere with federal copyright law or policy.'" *Sun I*, 188 F.3d at 1122 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989)). Applying California contract law,[5] we begin by analyzing the structure and language of the Agreement.

### 1.   Section 2.1 Defines The License Scope.

Section 2.1 establishes the scope of Meta's license. In that section, the parties broadly set forth Meta's (i) distribution rights, (ii) use rights, (iii) encoding rights, (iv) back-up creation rights, and (v) trademark rights. *See* RJN, Ex. A §2.1 at 2. After setting forth these rights, the parties refer to them, collectively, as "the license." *See id.* ("The *foregoing license* shall include . . .") (emphasis added). Even the language used in Section 2.2 makes clear that Section 2.1 is where the parties set forth Meta's license and, specifically, the scope of Meta's distribution rights: "Licensee agrees not to (i) transfer, sublicense or distribute Titles, *except as provided in Section 2.1*." *Id.* §2.2 at 2 (emphasis added).

It is helpful to consider the some of the limitations on the scope of Meta's license to which the parties' *did* agree:

- The license grant was limited to three years (*see id.* §2.1 at 2), so any use of the Titles by Meta beyond that three-year term would exceed the scope of Meta's license.

- Meta was *not* licensed to allow the download of the Titles by "Download to Own" means (*id.*), which is defined as allowing download through "the sale of a complete version of one of the Titles on a one off basis for compensation specific to that transaction." *Id.* §1 at 1. Had Meta allowed the download of the Titles by Download to Own means, that would have exceeded the scope of Meta's license.

- Meta was *not* licensed to distribute the Titles by "physical delivery via DVD, video tape or

---

[5]By the parties' agreement, the Agreement "and all collateral matters will be governed by and construed in accordance with laws of the defendant, without regard to or application of conflicts of law rules or principles." RJN, Ex. A §12.7 at 6. California law applies because Meta (the defendant) operates its principal place of business, and the Agreement was executed, in San Francisco, California. *See* Compl. ¶¶5, 17.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   other physical storage means." *Id.* §2.1 at 2.   Had Meta done so, that would have

2   exceeded the scope of Meta's license.

3   The limitations on the scope of Meta's license appear in the license grant itself.   In contrast,

4   none of the allegedly breached provisions—the Promotional Segments Provision, the Give Away

5   Provision, or the Third Party Benefit Provision—appear in Section 2.1.   Rather they all appear in

6   Section 2.2, which sets forth "Restrictions and Additional Terms."   That section covers a lengthy list

7   of peripheral permissions and promises. *Id.* §2.2 at 2.   For example, promises not to use the Titles

8   on a "pay per" or "on demand" basis; permission to use the Titles for design purposes; permissions

9   to resize, rename or alter the format of the Titles; and permissions and promises concerning

10   affiliates' promotional use of the Titles. *Id.*   Nowhere is there any indication either in Section 2.1 or

11   in Section 2.2 that the *license granted* in Section 2.1 is limited by compliance with the terms set

12   forth in Section 2.2, or that Section 2.2—rather than Section 2.1—defines the scope of the license.

13   *Id.* §2 at 2.

14   This Court analyzed a similarly structured agreement in *Sun II*, and that analysis is directly on

15   point here.   In *Sun II*, as here, one section of the parties' agreement set forth a broad license.   Sun,

16   the licensor, granted to Microsoft, the licensee, a license "'to make, access, use, copy, view, display,

17   modify, adapt, and create Derivative Works of the Technology in Source Code form for the

18   purposes of developing, compiling to binary form and supporting Products'", and to "'make, use,

19   import, reproduce, license, rent, lease, offer to sell, sell or otherwise distribute to end users as part of

20   a Product or an upgrade to a Product, the Technology and Derivative Works thereof in binary

21   form.'"   81 F. Supp. 2d at 1028.   The parties then set forth certain additional obligations in a

22   subsequent section of the agreement.   Those additional obligations were "compatibility requirements

23   on [the licensee's] commercially distributed implementations of the [licensed technology]." *Id.*.

24   Specifically, the compatibility requirements restricted what the licensee could and could not include

25   with the copyrighted works. *See id.* ("any new version of a Product that Licensee makes

26   commercially available to the public . . . shall only include the corresponding Compatible

27   Implementation").

28   The Court looked to the "language and structure of the [agreement]" (*id.* at 1032), and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

META INTERFACES, LCC'S MOTION TO DISMISS                    CV 10-3585 BZ

-11-

concluded that "the compatibility obligations are separate covenants" (*id.*) because "[t]he license grants in sections 2.1 . . . and 2.2 . . . allow [the licensee] to distribute the Technology and Derivative Works of the Technology as part of a Product *but say nothing about the license grants being subject to, conditional on, or limited by compliance with the compatibility obligations set forth in Section 2.6 . . . .*" *Id.* (emphasis added). Applying this analysis, Court held that the licensor had not made a showing of copyright infringement. *Id.* at 1032-33.

Just so here. Section 2.1 establishes the scope of Meta's rights to use and distribute the Titles, but says nothing about those rights being conditioned upon, or limited by compliance with, the terms of Section 2.2. In the absence of contractual language reflecting that the copyright license is *conditioned* upon, or that its *scope* is limited by, other terms, there can be no finding of copyright infringement. *See Effects Assocs.*, 908 F.2d at 559 n.7 (full payment for copyrighted works not deemed a condition to license; noting that conditions are "disfavored and will not be read into a contract unless required by plain, unambiguous language"); *Sun II*, 81 F. Supp. 2d at 1032 (provision deemed covenant and not condition where the provision said nothing about license grant being "subject to, conditional on, or limited by compliance with [the provision]"); *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) (no claim for infringement despite licensee's failure to include notice crediting licensor's authorship with copyrighted works as required by agreement because the parties "did not clearly delineate its conditions and covenants," and there is a presumption against conditions); *Jacob Maxwell, Inc.*, 110 F.3d at 754 (no copyright infringement where licensor "expressly granted the [licensee] permission to play the song before payment was tendered or recognition received" and therefore there was no indication that "permission to play was conditioned on prior payment and public recognition"); *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 484 (5th Cir. 1981) (no copyright infringement where licensee breached provision requiring it to include copyright notice "on the surface of the copies" of the copyrighted work because said requirement "d[id] not contain any express words of condition"). This analysis makes particular sense in this case where Fraserside is seeking a draconian remedy of millions of dollars in statutory damages for conduct that, even if true, has resulted in no or little apparent harm to Fraserside.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

### 2. The Remainder Of The Agreement Confirms That The License Granted In Section 2.1 Is Not Conditioned Upon The Additional Terms.

A reading of the Agreement as a whole confirms that the scope of Meta's license is set forth in Section 2.1, and that the license was not conditioned upon Section 2.2.

*First*, the termination provision—including the cure requirement in particular—establishes that the license set forth in Section 2.1 is not conditioned on the Additional Terms in Section 2.2. It is a basic proposition of copyright law that a licensor can sue its licensee *once the licensor has terminated the license*. *See Peer Int'l*, 909 F.2d at 1332 (licensee infringed copyright by continuing to make recordings of copyrighted works after receiving written notice of termination from the copyright owners). But, here, in order to terminate the Agreement, Fraserside would have had to comply with the cure requirement of Section 8.2:

> **8.2. Termination**. If either party breaches a material obligation under this Agreement, the non-breaching party may provide written notice to the breaching party indicating the non-breaching party's intention to terminate this agreement. *If such material breach is not cured* within 30 days after such notice, the non-breaching party may terminate this Agreement upon written notice." (RJN, Ex. A §8.2 at 4 (emphasis added))

Fraserside does not—and cannot—allege that it satisfied the notice and cure requirements of this provision. If Fraserside could automatically sue for copyright infringement based on a purported breach of the Additional Terms, then Fraserside would be able to effectively sidestep the cure requirement to achieve the advantages of termination with none of its disadvantages. The 30-day cure provision would be meaningless. *See Sun II*, 81 F. Supp. 2d at 1033 ("If [the licensor] could sue for copyright infringement immediately upon [the licensee's] failure to fully meet the compatibility requirements, the remedies scheme would be frustrated and [the licensee] would not get the full benefit of its bargained for cure periods").[6]

*Second*, the parties were explicit when creating conditions elsewhere in the Agreement. *See*

---

[6]Nor does Fraserside allege that it attempted to rescind the Agreement or that the Agreement has been terminated. In order to rescind, Fraserside would have to "[r]estore[] to [Meta] everything of value which he has received from him under the contract." Cal. Civ. Code §1691. Fraserside has made no attempt to do so. Indeed, rather than suggesting that the Agreement is not in effect, or attempting to rescind the Agreement, Fraserside seems to be saying the opposite—that the Agreement is in force, and that Meta should therefore be held to its terms.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

RJN, Ex. A at §9.3 (providing "conditions" to indemnification, and using emphatic "only if" language).  Courts will not accomplish by implication that which parties have shown they know how to accomplish explicitly.  *See 250 L.L.C. v. PhotoPoint Corp. (USA)*, 131 Cal. App. 4th 703, 724 (2005) (refusing to imply waiver of one statutory right where parties had explicitly waived another statutory right: "[The explicit waiver] provision shows that when the parties intended to provide for waivers of statutory rights they knew how to do so very explicitly").  That is particularly so in the case of conditions, which are "disfavored and will not be read into a contract unless required by plain, unambiguous language." *Effects Assocs., Inc.*, 908 F.2d at 559 n.7.  Had the parties intended for Meta's license to be conditioned upon compliance with Section 2.2, they would have said so.

*Third*, the fact that the parties contemplated *damages*, including consequential damages, for a breach of Section 2 (*see* RJN, Ex. A §10.1) demonstrates the existence of a covenant rather than a condition.  When a *condition* fails, damages are not appropriate.  In such circumstances, the parties' agreement ceases to be effective, and no damages lie.  *See Kadner v. Shields*, 20 Cal. App. 3d 251, 258 (1971) (If the condition is not fulfilled, "the right to enforce the contract does not evolve"); *Bennett v. Carlen*, 213 Cal. App. 2d 307, 311 (1963) (where condition failed, "appellant's obligation to perform his side of the contract was never fulfilled, and respondent was accordingly not entitled to recover damages").  Accordingly, if the parties believed Section 2.2 to contain conditions of their license, their provisions concerning limitations of liability and consequential damages in the event of breach would make little sense.

*Fourth*, and finally, elsewhere in the Agreement, the parties refer to the possibility of "breaches" of Section 2 (*see* RJN, Ex. A §§10.1-10.2)—breach is a term used in connection with covenants, not conditions.  *See, e.g., Dillingham-Ray Wilson v. City of Los Angeles*, 182 Cal. App. 4th 1396, 1407 n.9 (2010) (describing difference between covenants and conditions: "'if no condition is stated, and B merely makes a promise, his or her *breach of covenant* will give rise to a right of action for damages, but will not necessarily excuse A's performance'") (emphasis added) (quoting 1 B. Witkin, *Summary of California Law*, Contracts §778 at 867-68 (10th ed. 2005)).  In contrast, terms like "non-occurrence" or "failure" are typically used with respect to conditions.  *See Jacobs v. Tenneco West, Inc.*, 186 Cal. App. 3d 1413, 1417 (1986) (discussing relationship between

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   "a party's breach by non-performance" on the one hand and "non-occurrence of a condition" on the

2   other); *Wachovia Bank v. Lifetime Indus., Inc.*, 145 Cal. App. 4th 1039, 1053 (2006) (discussing

3   consequence of "a *failure* of a condition to closing *or* a contractual *breach*") (emphases added).

4   These terms are absent in the Agreement.

5           In summary, the Complaint focuses entirely on alleged breaches by Meta of contractual

6   covenants, and not failures of any *condition* of the Agreement or limitations on the *scope* of Meta's

7   license.  Fraserside has not alleged that it has terminated or rescinded the Agreement (and it hasn't).

8   Fraserside accordingly has come nowhere near "definitively establish[ing]" (*Sun I*, 188 F.3d at

9   1122) that the rights purportedly violated are copyright, not contractual, rights.  Instead, Fraserside

10  seeks to retain its benefit of the bargain—the $106,000 license fee—and multiply it by millions of

11  dollars in statutory damages for conduct which, even if true, amounts to minor breaches of

12  contractual covenants that have resulted in little if any harm to Fraserside.  Because Fraserside's

13  claim sounds in contract, its copyright infringement claim should be dismissed.

**C.      Fraserside's Allegations Do Not Show That Meta Violated Any Provision Of The
         License Agreement.**

16          Even putting aside that Fraserside is not permitted to sue its own licensee for copyright

17  infringement, Fraserside's allegations—all taken as true—do not show that Meta has violated the

18  Agreement.

**1.      Fraserside Has Not Properly Alleged That Meta Violated The Promotional
         Segments Provision.**

21          Fraserside relies heavily on its allegation that, regardless of who owns, operates, or controls

22  the Sites, Meta provided the purportedly unauthorized videos.  *See* Compl. ¶¶30, 36, 154, 259.  But

23  this allegation gets Fraserside nowhere because the Agreement expressly permits Meta to distribute

24  the films (RJN, Ex. A §2.1 at 1), and provides in a final, standalone sentence in Section 2:

25  *"Notwithstanding anything in this Agreement to the contrary, distribution through a url shall in*

26  *all cases be permitted."*  *Id.* §2.2 at 2 (emphasis added).  By its own terms, this provision sets forth

27  the "final word" regarding Meta's rights to distribute—namely, that Meta's rights to distribute

28  through urls are unrestricted and authorized under the Agreement.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    Fraserside's implicit argument is that the Promotional Segments Provision—which governs

2    "DVD[s], Video Clip[s] and/or Photos Galleries" that Meta may "provide" to its affiliates—

3    constitutes a limitation upon Meta's right to show the Titles on its websites.  It does not.  The

4    Agreement could not be more clear that if there is one thing Meta can do, it is feature the Titles on

5    Meta's websites.  *See id.* §§2.1 (permitting distribution, transmission, streaming, and allowing

6    download of the Titles), 2.2 ("distribution through a url shall in all cases be permitted").  The

7    Promotional Segments Provision pertains to something different from "distribution" through a url.

8    It pertains to affirmatively "provid[ing]" Titles to affiliates for promotional use (*i.e.*, expressly

9    authorizing affiliates to use designated portions of the Titles for their promotional use)—not merely

10   distributing "through a url" (*i.e.*, through Meta's own websites).  Fraserside *never* alleges that Meta

11   distributed the Titles by a means besides through a url (and it didn't).

12   If the owners and operators of the Sites merely downloaded the Titles from Meta's sites, then

13   Fraserside has no claim (especially given that any such download for redistribution would have

14   violated Meta's terms and conditions of service).  This is insufficient to establish liability.  *See Bell*

15   *Atl. Corp.*, 550 U.S. at 557 (where a complaint pleads facts that are "merely consistent with" a

16   defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to

17   relief'").

18   Additionally, Fraserside alleges that the Agreement prohibits Meta from "permitting anyone,

19   including [Meta's] affiliates, from using any portion of a Plaintiff film in excess of two minutes."

20   Compl. ¶14.  Fraserside then alleges that Meta violated this provision.  *See id.* ¶¶35 ("Each . . .

21   video displayed . . . exceeds nine (9) minutes in length"), 153 ("Each . . . video displayed . . .

22   exceeds two minutes"), 256 ("Each . . . video displayed . . . exceeds nine (9) minutes in length").

23   But the Agreement *does not* prohibit Meta from permitting anyone from using "any portion" of a

24   Plaintiff film in excess of two minutes: it provides that "the promotional segments shall not exceed

25   at any case two (2) minutes in duration *per scene* . . . ."  RJN, Ex. A §2.2 at 2 (emphasis added).

26   Accordingly, under the plain terms of the Agreement, promotional segments can be five minutes or

27   twenty minutes long *total*, as long as the scenes that comprise the promotional segments never exceed

28   two minutes.  Fraserside has not alleged that the Sites feature *scenes* in violation of the Promotional

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

META INTERFACES, LCC'S MOTION TO DISMISS                    CV 10-3585 BZ

1    Segments Provision.

2        **2.     Fraserside Has Not Properly Alleged That Meta Violated The Third Party**
         **Benefit Provision.**
3

4        Fraserside fails to allege that the owners or operators of the Site are not affiliates of Meta or

5    other parties who receive compensation in connection with the revenue or profit generated by

6    Meta's website.  This is critical because such persons—for example, partners of Meta who receive a

7    share of Meta's profits by directing traffic to Meta's websites—are carved out of the definition of

8    "Third Party," which means that the Third Party Benefit Provision would not apply to Meta's

9    relationships with those parties.  RJN, Ex. A §1 at 1.  There is therefore no reasonable basis to infer

10   that Meta breached this provision.  That is not enough to survive a motion to dismiss.  *See Bell Atl.*

11   *Corp.*, 550 U.S. at 545.

12       **3.     Fraserside Has Not Properly Alleged That Meta Violated The Give Away**
         **Provision.**
13

14       Similarly, Fraserside fails to make allegations from which this Court can reasonably infer that

15   Meta violated the Give Away Provision.  There are two fatal defects in Fraserside's allegations

16   concerning the Give Away Provision.  *First*, just like the Third Party Benefit Provision, the Give

17   Away Provision only applies to Meta's relationship with "Third Parties."  Again, Fraserside never

18   alleges that the operators of the Sites are "Third Parties."  *Second*, by its own terms the Give Away

19   Provision *does not* prohibit Meta from doing any of the following, "rent[ing], leas[ing],

20   sublicens[ing], giv[ing] away, lend[ing], transfer[ring], authoriz[ing] the use of, or distribut[ing] the

21   Titles" (RJN, Ex. A §2.2 at 2), if done *"through the bonafide use of [Meta's] websites." Id.*

22   (emphasis added).  Critically, Fraserside has not alleged (and will never be able to show) that Meta

23   distributed the Titles to anyone except "through the bonafide use of Meta's websites." *Id.* There is

24   therefore no proper allegation of a violation of the Give Away Provision.

25                                       **II.**

26            **FRASERSIDE'S CLAIM FOR CONTRIBUTORY COPYRIGHT**
                **INFRINGEMENT FAILS AS A MATTER OF LAW.**
27

28       Fraserside's allegation of contributory copyright infringement against Meta fails as a matter of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   law. To begin, the parties' license agreement covers Meta's distribution of the copyrighted works to

2   third parties. *See* RJN, Ex. A §2.1 at 1. Any alleged transgressions of those provisions are, again, a

3   matter of contract law. *See* Section I, *supra*.

4        Additionally, to state a claim for contributory copyright infringement, Fraserside must plead

5   that Meta induced, caused, or materially contributed to the infringing conduct with knowledge of the

6   infringing activity. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007).

7   Fraserside makes no such allegations and pleads no facts from which this Court can draw a plausible

8   inference that Meta either had knowledge of the purported infringement and/or had control over it.

9   *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by

10   intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting

11   from direct infringement while declining to exercise a right to stop or limit it") (citation omitted).

12   Fraserside's conclusory allegation that Meta owns and/or controls the Sites (*see, e.g.*, Compl. ¶28)

13   does not show knowledge of infringement or the requisite level of intent. Nor does its "formulaic

14   recitation of a cause of action's elements" (*Bell Atl. Corp.*, 550 U.S. at 545) suffice. *See, e.g.*,

15   Compl. ¶¶391-396.

**III.**

**FRASERSIDE FAILS TO STATE ANY CLAIM FOR RELIEF UNDER THE LANHAM ACT.**

**A.    As With A Copyright Licensor, A Trademark Licensor Waives Its Right To Sue Its Own Licensee For Infringement.**

20        For the same reasons discussed at length above in Part I(A), *supra*, the purported trademark

21   claims under the Lanham Act should be dismissed. Every trademark license "carries with it a

22   waiver of the right of the trademark owners to sue for infringement arising out of acts that fall within

23   the scope of the license." 4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §25:30

24   (4th ed. 2010). Here, Fraserside unequivocally licensed Meta to "utilize and display" the trademarks

25   associated with the Titles (RJN, Ex. A §2.1), and has not alleged that a condition of the license has

26   failed, that Meta exceeded the scope of the license, or that it has terminated or rescinded the license.

27   Accordingly, dismissal is appropriate. *See Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir.

28   2008) (dismissing infringement claim because "where the trademark holder has authorized another

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the

2   alleged infringer uses the mark as authorized").

3   **B.    The Lanham Act Claims Are Defective For The Independent Reason That**
       **Fraserside Fails To Properly State The Elements Of, Or Supporting Allegations**
4       **For, A Lanham Act Violation.**

5       **1.    Fraserside Fails To State A Claim For Trademark Infringement Under The**
               **Lanham Act.**
6

7       To state a claim for trademark infringement under the Lanham Act, Fraserside must allege that

8   Meta *uses* an infringing mark in interstate commerce *in connection with* the sale or advertising of

9   goods or services. *See* 4 J. McCarthy, *McCarthy on Trademarks and Unfair Competition* §25:26

10  (4th ed. 2010); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) ("the critical

11  determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the

12  consuming public will be confused as to who makes what product").



13      Fraserside makes the conclusory allegation that Meta's use of Fraserside's trademarks is

14  "likely to create consumer confusion" (Compl. ¶400) but nowhere makes any factual allegations that

15  *Meta* actually uses Fraserside's trademarks on the Sites.  Instead, Fraserside uses the passive voice

16  to avoid making any concrete allegation about *who* purportedly uses its trademarks.  *See, e.g., id.*

17  ¶378 ("Plaintiff's trademarks were infringed in this manner as they were displayed without the

18  consent of, or licensing by, the Plaintiff, the trademark owner and registrant of the trademark").

19  This is not enough. *See Ashcroft*, 129 S. Ct. 1937 at 1949 ("Threadbare recitals of the elements of a

20  cause of action, supported by mere conclusory statements, do not suffice").

21      Similarly, Fraserside nowhere alleges that if Meta is using the trademarks, that it is doing so in

22  transgression of the Agreement, or that its trademarks are being used in connection with anything

23  other than Fraserside's own actual products.  The Lanham Act has as its object "the protection of

24  trade-marks, securing to the owner the good will of his business and protecting the public against

25  spurious and falsely marked goods." S. Rep. No. 1333, 79th Cong., 2d Sess. 1, 3 (1946).  The evil

26  sought to be remedied in the trademark infringement action is that of "passing off"—the "sale of

27  another's goods as those of the trade-mark owner by use of the owner's mark." *Developments in the*

28  *Law, Trade-Marks and Unfair Competition*, 68 Harv. L. Rev. 814, 818 (1955).  Fraserside's claims

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1    have nothing to do with those objectives.

2    **2.   Fraserside Fails To State A Claim For False Designation Of Origin Or For Unfair Competition Under The Lanham Act.**

3

4    Similarly, to state a claim for false designation of origin—or, an unfair competition claim

5    under the "false association" prong of Section 43(a) of the Lanham Act[7]—Fraserside must show that

6    Meta has used in commerce a "word, term, name, symbol, or device, or any combination thereof, or

7    any false designation or origin, false or misleading description of fact, or false or misleading

8    representation of fact," which is likely to cause confusion, mistake, or deception "as to the

9    affiliation, connection, or association of" Fraserside with Meta or "as to the origin, sponsorship, or

10   approval of [Meta's] . . . goods, services, or commercial activities . . . ." 15 U.S.C. §1125(a).

11   Again, Fraserside's purported claims all relate to the Sites, but Fraserside has not alleged—and will

12   not be able to allege in good faith—that *Meta* has used any "word, term, name, symbol, or device,"

13   or made any "description of fact" or "representation of fact" in connection with the Sites.

14   Finally, to state an unfair competition claim under the "false advertising" prong of Section

15   43(a) of the Lanham Act, Fraserside must show that (1) Meta made false or deceptive

16   advertisements and representations to customers; (2) those advertisements and representations

17   actually deceived a significant portion of the consuming public; and (3) Fraserside was injured by

18   Meta's conduct. *See William H. Morris Co. v. Group W, Inc.*, 66 F.3d 255, 257 (9th Cir. 1995).

19   Fraserside cannot graduate past the first prong: it nowhere alleges that Meta made any false or

20   deceptive advertisements or representations to customers.   Further, while Fraserside alleges a

21   likelihood of confusion as a result of Meta's "conduct" (Compl. ¶403), much more is required.

22   Fraserside must allege that Meta's advertisements or representations (the existence of which it

23   hasn't alleged to begin with) "*actually deceived* a significant portion of the consuming public."

24   *William H. Morris Co.*, 66 F.3d at 257 (emphasis added).   Not only has Fraserside failed to allege

25   that, it will be impossible for Fraserside to make that allegation given that Fraserside does not deny

26

27   [7]It is unclear which prong of Section 43(a) Fraserside claims is applicable, so we analyze both.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

that its marks are being used in connection with *its own films*. *See, e.g.,* Compl. ¶¶210 (alleging that "Dorothy Black and Rita Faltoyano and Tina T Gladiator" is a Fraserside work), 252 (alleging trademark infringement in connection with that work). Accordingly, there can be neither deception nor confusion. *See AmCan Enters. v. Renzi*, 32 F.3d 233, 235 (7th Cir. 1994) ("The use of similar names to denote the identical product of a single seller is no more confusing than the fact that two bottles of Coca-Cola carry the same name").

Even if Fraserside had alleged the requisite elements of the Lanham Act claims (it did not), far more factual detail would be required to support Fraserside's legal conclusions. *See* pp. 7-8, *supra*. Fraserside's purported Lanham Act claims are legally and factually unsupported; those claims should be dismissed as well.

**IV.**

**FRASERSIDE'S CLAIMS FOR AN ACCOUNTING AND FOR CONSTRUCTIVE TRUST FAIL BECAUSE THEY ARE REMEDIES (NOT CLAIMS), ARE INSUFFICIENT TO ESTABLISH FEDERAL JURISDICTION, OR ARE PREEMPTED.**

The only remaining allegations are Fraserside's two state law claims for accounting (Count VI) and constructive trust (Count VII). Neither an accounting nor a constructive trust is properly a "claim" in its own right. *See Stansfield v. Starkey*, 220 Cal. App. 3d 59, 76 (1990) (sustaining demurrer of purported causes of action for resulting trust and constructive trust on grounds that "neither is a cause of action, only a remedy") (citation omitted); *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 714 n.7 (2002) ("We point out the claims for constructive trust and accounting seek remedies"). If the copyright and trademark claims are dismissed (as they should be), then these two remedies will have no predicate claim on which to be based, and will have to be dismissed as well.

Even if an accounting and constructive trust could be alleged without a predicate cause of action, here, without the copyright or trademark claims, this Court could decline to exercise supplemental jurisdiction over the state law claims (*see* 28 U.S.C. §1367), and would have no reason to do otherwise. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 343 (1988) ("Where . . . all

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

META INTERFACES, LCC'S MOTION TO DISMISS                    CV 10-3585 BZ

1   federal-law claims in the action have been eliminated and only pendent state-law claims remain, the

2   district court has a powerful reason to choose not to continue to exercise jurisdiction"). Fraserside

3   has not alleged diversity jurisdiction (*see* Compl. ¶¶1-3), and is unlikely to be able to satisfy the

4   $75,000 amount-at-issue requirement even if permitted to replead.

5       If on the other hand, if the copyright claim stands, the state law claims will be preempted and

6   will have to be dismissed on that basis. "Preemption analysis involves determining whether the

7   state law claim contains an element not shared by the federal law; an element which changes the

8   nature of the action so that it is *qualitatively* different from [an] . . . infringement claim." *Summit*

9   *Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993) (citation and

10  internal quotation marks omitted). Fraserside admits that both the accounting and constructive trust

11  "claims" are parasitic upon Meta's purportedly "wrongful conduct" (Compl. ¶¶410, 413) (*i.e.,* the

12  purported infringement). And it simply reincorporates the allegations from the purported federal

13  claims, and does not even attempt to state a qualitatively different cause of action. Fraserside's state

14  law claims therefore are preempted. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115,

15  1131-32 (N.D. Cal. 2001) (claim for involuntary trust preempted); *Motown Record Corp. v. George*

16  *A. Hormel & Co.*, 657 F. Supp. 1236, 1241 (C.D. Cal. 1987) (constructive trust and accounting

17  "preempted . . . based on the premise that they are equivalent to rights and remedies provided for

18  under the copyright statute").

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1

**CONCLUSION**

2    For the foregoing reasons, Meta respectfully requests that the Court dismiss with prejudice

3 the Complaint in its entirety.

4

5 DATED: September 17, 2010.

6                                                     Respectfully,

7                                                     CLARA J. SHIN
                                                      SHAUDY DANAYE-ELMI
8                                                     HOWARD RICE NEMEROVSKI CANADY
                                                             FALK & RABKIN
9                                                     A Professional Corporation

10                                                    By: _____
                                                              CLARA J. SHIN
11
                                                      Attorneys for Defendant META INTERFACES, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation